NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

KATIE VAN BODEGON, PETITIONER, v. STANDARD
COATED PRODUCTS CORPORATION, RESPONDENT.

Decided July 18, 1940.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *James J. Skeffington.*

\*       \*       \*       \*       \*       \*       \*

From the evidence presented before me, it appears that on
March 30th, 1938, and for many years theretofore, Peter
Van Bodegon was employed as a truck driver by respondent,
a manufacturer of coated textiles at 60 Clifton Boulevard,
Clifton, New Jersey, at an average wage of $27.20 a week;
that up to said March 30th, he had worked steadily and had
been in sound health, without any sickness, colds excepted;
that at about noon of that day, apparently well, he started
out alone for New York City, driving one of respondent's
trucks—a one and one-half ton truck, with a rack or lattice
body and an iron tailboard, containing bales and packages
of respondent's products for delivery, as directed by respond-
ent, to three of its customers in that city; that one or more
of the bales, weighing about 500 pounds and being fifty-seven
by twenty by nineteen inches in dimensions, was or were to
be delivered on the sidewalk, to Weiss and Klau, 462 Broad-
way, New York; that in making this delivery, Van Bogedon's
lower abdomen accidentally struck against the iron tailboard
of his truck and that his urinary bladder was thereby rup-

tured; that upon his returning to respondent's plant at about four-thirty o'clock in the afternoon of the same day, he seemed to observers—respondent's employes—to be in pain; that he was in a stooped position, and apparently had difficulty in getting up on his truck; that he was a large man, heavy in build, but physically active; that his bearing and manner in respondent's yard upon his coming back from his said trip was in such pronounced contrast to his usually energetic movement as to have drawn the notice and arrested the attention of several of his co-employes; that on handing in his delivery receipts to the employe of respondent, whose business it was to receive them from him, he reported that he had been hurt while making delivery to said Weiss and Klau's—in handling a bale he had lost balance, he said, and slipped, and his lower abdomen had struck against the iron tailboard of the truck; that on the morning of March 31st, in his home in Clifton, where he resided with his wife, the petitioner, descended the stairs on his hands and knees, and held his abdomen and was in pain, and had no breakfast but coffee; that nevertheless he reported for work, but, so far as is shown by the evidence, did nothing beyond transporting by truck some small bales, weighing about 150 pounds each, to the express office at the Lackawanna station in Passaic; that he complained of pain, from time to time, throughout the day; that when he returned to his home at about six P. M. on March 31st, he was in acute distress; that a doctor was called in about a half hour later, and caused his removal to the Passaic General Hospital, in Passaic; that shortly after his admission there, he gave to a physician a "history" in regular course; that the physician thereupon examined him, and diagnosed the case as a rupture of the urinary bladder; that he was operated upon at nine-thirty P. M. on the same evening, and the operation confirmed the diagnosis; that on April 4th, 1938, he died in the hospital from peritonitis; and that the peritonitis was the result of the rupture—urine having been thereby disseminated through the abdomen—and the rupture the result of his said accident; and that the petitioner is his widow and his sole dependent.

\*      \*      \*      \*      \*      \*      \*

A copy of the certificate of death of Peter Van Bodegon, made by Dr. Elroy W. Smith, his attending physician, to the New Jersey State Department of Health, Bureau of Vital Statistics—certified by J. Lynn Mahaffey, director of the Department of Health of said state, under the official seal of said State Bureau of Vital Statistics, attested by Walter R. Scott, state registrar, was offered on the part of petitioner, and admitted in evidence, and marked *P-1* as of May 7th, 1940. For the purpose of showing the last day on which Van Bodegon worked, respondent's employment record of this employe was also offered on his behalf, and admitted and marked *P-7* as of March 18th, 1940. And the report or notice of the alleged accident by respondent to its liability insurance carrier, produced by the latter on demand, was admitted also, and marked *P-12* as of May 7th, 1940.

It appears from the statement, hereinbefore set forth, of the testimony that hearsay evidence was received; but I am aware that such evidence "can form no basis for an award." *Friese* v. *Nagle Packing Co.,* 110 *N. J. L.* 588; 166 *Atl. Rep.* 307.

Eliminating from consideration the declarations of the decedent, the competent evidence preponderates in favor of the petitioner.

The certified copy of the death certificate, complying strictly with *R. S.* 26 :6-8, is, by statutory mandate, *"prima facie* evidence of the facts therein stated in all courts and pleas." *R. S.* 2 :98-14; *N. J. S. A.* 2 :98-14.

That exhibit declares that "the principal cause of death and related causes of importance in order of onset were as follows: Peritonitis following ruptured urinary bladder;" "Date of onset 3/30/38." It further declares that death was due to an "accident" occurring to decedent on "3/30/38" "while at work" in "industry," and, more specifically, while "working on a truck and tailboard struck him in lower abdomen;" and that "the nature of injury" was "Blow to lower abdomen." It still further declares that "E. W. Smith, M.D." (who made the medical certificate of death), "attended deceased from 3/31/1938 to 4/4, 1938;" that he "last saw him alive on 4/4/1938," and that the last named date was the date of death.

The witness, Dr. Graeter, testified, in effect, that Dr. Elroy W. Smith was in fact the attending physician—that Dr. Smith performed the operation, Dr. Graeter assisting; and that he, Dr. Graeter, while licensed to practice at the time, was, in fact, then serving out a year as "an interne" in the hospital.

It appears that between the time of Van Bodegon's admission to the hospital and the hour of his operation (both on the same evening) that the interne took Van Bodegon's personal history (*Exhibit P-2, 2/18/40*); but the fact that on one occasion an interne obtained certain particulars from a patient raises no presumption that the attending physician, at some other time, did not obtain the like particulars from the same source.

Moreover, in making a certified copy of a death certificate—the original of which has been "made by any person according to law"—*prima facie evidence only* "of the facts therein stated"—the legislature did not direct, or attempt to direct, the source or sources from which the maker should obtain "the facts." The enactment (*R. S.* 26:6-8; *N. J. S. A.* 26:6-8) provides:

"In the execution of a death certificate, the personal particulars shall be obtained from the person best qualified to supply them."

It next classifies the particulars as the "death and last sickness particulars" and as the "burial particulars," and designates what person shall supply the one set and who the other: "The *death and last sickness particulars* shall be supplied by the *attending physician,* or if there be no attending physician, by the county physician or coroner. The *burial particulars* shall be supplied by the *undertaker.* Each *informant* shall certify to the particulars supplied by him by signing his name below the last items furnished."

And this is precisely what was done in the present case—the attending physician certifying to the particulars supplied by him, and the undertaker to those supplied by him.

That *Exhibit P-1* as of May 7th, 1940 (the certified copy of the death certificate) is competent *"prima facie* evidence of the facts therein stated in all courts and places," seems to be settled law.

"Under statutes making copies of public records *prima facie* evidence of the matters that are stated therein, it is the practice to introduce in evidence certified copies of records of vital statistics—that is, birth and death certificates and the like which are required by law to be filed in public offices. Thus a physician's certificate of death or a certified copy thereof, is admissible as *prima facie* evidence of the time, place and cause of the decedent's death where the statute requires these matters to be stated in the certificate; and this is true although the statement as to the cause of death is a conclusion which the physician would not have been permitted to state as a witness giving oral testimony before the court." *Jones on Evidence* 981.

The hospital records, so far as the same were offered and admitted, seem to be competent proof. *Opdyke* v. *Halbach,* 123 *N. J. L.* 123; 7 *Atl. Rep.* (*2d*) 635.

Dr. Graeter testified that, in his opinion, the rupture of the urinary bladder was caused by trauma; and there was no expert opinion evidence to the contrary. And I cannot find the weight of his testimony to be affected by his statement that, in his physical examination of Van Bodegon, he observed no discoloration, or other external sign of trauma, on the latter's abdomen. No expert testified or suggested that such sign should be expected, or that the absence of it would be unlikely. Van Bodegon, according to the evidence, was a large, heavy man; and it may, I suppose, be assumed that on March 30th, he was clad appropriately to the season.

The proven circumstances, neither rebutted nor denied, tend to confirm petitioner's case. Van Bodegon left the company's plant on his New York trip apparently in one state of health; he returned a few hours later apparently in another—in pain, without his habitual agility, in a stooped position, and, as one witness phrased it, visibly "a hurt man." The inference is that, in the course of his journey, some untoward thing had befallen him.

I have not failed to notice that in taking Van Bodegon's history, the interne sets down that Van Bodegon had fallen at about seven-thirty o'clock on the evening of March 30th, and had not urinated since his fall; but there is no further

evidence in regard to his fall, and no testimony that it caused, or could have caused, a rupture of the bladder. There is ample and credible and persuasive testimony (and no contradicting evidence) that he came back from his New York City errand "a hurt man." The fall, of which the hospital record speaks, occurred later.

There is no substantial contradiction of petitioner's case at any point or in any phase.

After carefully considering the competent evidence, excluding all hearsay, I find and determine that on March 30th, 1938, Peter Van Bodegon met with an accident arising out of and in the course of his employment by respondent.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

JOHN J. STAHL,
*Deputy Commissioner.*